23-6279. Good morning, and AUSA Permanence, I understand you'd like to reserve two minutes for questions. Yes, Your Honor. Okay, when you're ready. May it please the Court, Laura Pomerantz for the United States. I represent the United States on appeal, and I also represented the United States in the proceedings below. The District Court's grant of compassionate release should be reversed. The District Court found extraordinary and compelling reasons for compassionate release on the same grounds that this Court rejected as a matter of law in United States v. Fernandez. So I was going to start with that. As we all know, the Supreme Court granted cert in that case. Obviously, we hope everyone's going to make the best arguments you can today based on the state of the law. But as a practical matter, do we need to hold this case to see what the Supreme Court does in Fernandez? No, you do not, Your Honor. Okay, tell us why not. Of course, this Court can hold off deciding if that's the preference. But the Supreme Court was asked to take the two halves of Fernandez, both the sentencing disparities and the actual innocence part. And they only granted cert as to the half relating to actual innocence. And so the aspect of Fernandez's holding relating to sentencing disparities is not impacted. So you think we can have a high confidence level to keep the question presented as narrowly as the granted? Yes, Your Honor. They don't always. Sometimes there's some dicta or sometimes they expand it. Given the narrow grant of cert and that it was specifically on those – that the two issues that were raised on appeal were those two issues. Okay. And that the – Well, in Fernandez, we said we assume that a disparity between – like, challenging a sentence on the basis of a disparity between co-defendants does not consequence the validity of the sentence. But – so just separate from that question, it is not an extraordinary and compelling reason because if one defendant cooperated in the – or went to trial and had one plead guilty, that's not extraordinary and compelling, right? Yes. There isn't really a way for the Supreme Court, after having granted cert on the question of whether a reason that calls into question the validity of the conviction or sentence can be an extraordinary and compelling reason will reach the question of – even if it doesn't call into question the sentence, like, there's a disparity between co-defendants, is that an extraordinary and compelling reason? Like, I just don't see how the one question will bleed into the other. I think that's exactly right, Your Honor. So as this Court said in Fernandez, that there is nothing extraordinary and compelling about differently situated defendants receiving different sentences. And that legal error here in Seabrook is the same as that was in Fernandez and likewise requires reversal here. We had that caveat in Fernandez that said, well, you know, maybe there might be an extreme case or an extraordinary case where it would be extraordinary and compelling reason. So how do we know that this isn't that case? Fernandez held that in the mine run or the vast majority of cases, different sentences being imposed on different situated co-conspirators at different times is neither extraordinary nor compelling. And it did leave open that hypothetical possibility of a sufficiently extreme and unusual case. But that is not this case. Even on the facts, Seabrook is not distinguishable in any legally meaningful way. The dispositive circumstances of – Well, there were a lot of unusual circumstances, right? Originally, there was the same sentencing judge for all the defendants. And then through a very unusual sequence of events, the other defendants ended up being sentenced by other judges. And then the first sentencing judge says, well, I originally thought of this as, you know, all the defendants being roughly the same level of culpable. And so why isn't that extraordinary that, like, you know, it ended up being done by three different judges? Well, as a factual matter, even imposing sentence originally, Judge Hellerstein recognized Seabrook as more culpable than his co-conspirators by imposing a sentence of 58 months, which is almost more than double the sentence that he had imposed on Huberfeld. Right, but he thought it should be about double. I mean, that's what judges do, right? When you have a 20-codefendant case, right, say a racketeering case, the district judge is going to look at probably the prosecutors and say, okay, give me three tiers, right? Give me the people in the top tier, the middle tier, the lower tier, or however they want to segregate it, because they are trying to figure out relative culpability of the co-defendants. And isn't this sort of a bizarre situation where the initial assumption that held when the first sentencing happened here is that a certain set of guidelines applied, and then we said, no, no, no, you actually have to use this completely different set of guidelines, and that then get revanded and winds up getting assigned to a different judge, who then is sentencing under a completely different framework that the first judge, I think it's probably fair to assume, never would have assigned the same relative sentences to the different co-defendants had he known that completely different sentencing frameworks, sentencing guideline frameworks, were going to apply at least to, you know, defendants A and B. Why is that not a relatively extraordinary and unusual circumstance? I have to say, I don't know how often I've seen that happen. So in terms of unusual, it sounds pretty unusual. There is nothing extraordinary and compelling about the fact that Huberfeld's original sentence was vacated and that Huberfeld received a lower sentence on remand when the district court judge, Judge Lyman, calculated the guidelines appropriately according to the guidance provided by this court and used the guidelines as the starting off point. And aren't... And isn't the fact that the Huberfeld sentence is calculated under a completely different set of guidelines than the Seabrook sentence something that suggests these are not similarly situated people? Right. Exactly, Your Honor. They are not similarly situated. And that was, that is part of what is recognized by the guidelines in this case, both even as originally calculated, the guidelines were lower, but as correctly calculated, the Huberfeld's guidelines were 6 to 12 months as compared to the much higher guidelines, making them completely differently situated. But you don't disagree that the way all of this played out is kind of unusual, but it's not unusual in a way that renders the disparity between the co-defendants extraordinary and compelling? Exactly, Your Honor. Isn't it also just that we have the sort of realities in mind? It's, it is, I've never seen anything exactly like this in terms of a sentence gets remanded and then something happens that disqualifies the judge from passing that sentence and then it goes to somebody different. That probably is not an everyday occurrence. But isn't it actually an everyday occurrence that it's not, there are some cases where there's a 20 defendant indictment such as Judge Nardini explained and everybody winds up getting sentenced by the same judge. But it's actually fairly routine that people who cooperate during the course of an investigation plead guilty to an information and that gets assigned to Judge A and then a different cooperator folds and that gets assigned to Judge B. And then when those people's information is taken into account, there then becomes a different, larger indictment that takes in more people and that's assigned to Judge C. So that, you know, I remember as a district judge one of the problems that I often had is that what do you do with the situation where some people have been sentenced by one judge in a way that I might have regarded as unduly lenient? Am I now constrained to go along with that to avoid disparity? Or do I take account of the fact that I now know more about the overarching situation than those judges did? I'm confronted with this particular person and trying to sentence this particular person to what is overall appropriate. Otherwise you'd have a sort of ratcheting down of all sentences to whatever is the least common denominator of the defendants involved in the same scheme who get sentenced by different judges. Do you disagree with me that that's not an unfamiliar scenario? I do not disagree with Your Honor. Indeed, our criminal justice system permits multiple defendants to be in a case and allows defendants to appeal their sentences. Co-defendants may fare differently on appeal and they may be resentenced as a result. And as Your Honor just pointed out, sometimes co-defendant sentences will be imposed by different judges with different assessments of the facts. And I suppose, to jump in there, I suppose one of your arguments would be, okay, Judge Hellerstein wasn't then able to impose sentences on all these folks knowing what everybody else got, but Judge Lyman, who I guess was last in line, did know what the other folks had got and was able to impose, at least within the larger scheme of the case, a sentence that he thought was fairly reflective and one would presume he thought about where people fit within the scheme. I suppose that would be the counterargument, right? Yes. At the time that Judge Lyman imposed Huberfeld's sentence, Seabrook's original sentence of 58 months had been imposed and Jonah Recknitz's sentence had been imposed as well. But that again suggests, I mean, if Judge Lyman then was supposed to take account of the disparity that would be created by his unduly lenient sentence, or would be created by a lenient sentence, then wouldn't that suggest that maybe Judge Lyman should have considered Seabrook's sentence in deciding what Huberfeld should get? But that also would be a kind of one-way ratchet because the government's probably not going to appeal, didn't appeal, the Huberfeld sentence, wouldn't likely appeal a sentence in that situation. Huberfeld's certainly not going to appeal and say, ah, the judge should have considered the disparities. So again, you're winding up with a situation if this interpretation of disparity is taken as somehow a good reason to lower a sentence that the judge thought was right in the first place and that would otherwise be affirmed by us, it again creates a situation where the most lenient judge to get any co-defendant effectively is going to dictate the outcomes of the sentencing. I understand, Your Honor. And the district court is not required to consider internal case disparities. The issue, the question is nationwide disparities. And here you have three co-defendants who are not similarly situated, indeed are quite distinct. Yes, I mean, they don't have to take into account, but they have the discretion to do it. But I suppose one reaction to this whole discussion about the different sentencing judges is it can't be an extraordinary compelling reason to reduce a sentence that one district judge disagrees with another district judge who has the authority to sentence in that case and then invite a motion for compassionate release and then just do a tit-for-tat back and forth adjusting the sentence in response to what they do. They have to take for granted what the other sentencing judge who has authority over the case has done and you can't just keep reopening it based on your disagreement with a colleague. That's exactly right, Your Honor. What happens here would invite a never-ending cycle in multi-defendant cases of compassionate release motions when the initially sentenced defendants claim that their sentences should be reduced in light of later imposed sentences. Can I ask you, let's assume that you were to win, hypothetically. Obviously, we haven't made any judgment whatsoever, but if we were, I don't understand that the government has asked for reassignment of district judges if we were to vacate remand, and I'm just wondering why not in light of our decision in reckoning. These are our co-defendants, right, in the same case? So, yes, they are co-conspirators. Seabrook has actually requested that Judge Hellerstein recuse himself in connection with the Section 3582C2 motion that he filed and Judge Hellerstein has not yet ruled. Oh, okay, I guess I should do that. But do you think that we should reassign on remand were we to remand? We defer to the court. We have not yet articulated a position below, but as I mentioned, Seabrook has requested recusal. My understanding is the government almost never asks. I think that's correct. One thing that's kind of an open question, your position is that Seabrook is not currently on house arrest. That's correct. It is, I think, crystal clear from the court's Judge Hellerstein's decision that he released Norman Seabrook. It was a sentence of time served and said that it was unsupervised release under the conditions of supervision set forth in the original judgment which do not include a term of home confinement and probation confirmed to the government that Seabrook has not been on any form of home confinement since his release. Okay. Thank you very much. You've reserved two minutes for rebuttal. Why don't we hear from Mr. Adler? Mr. Adler, if you could start by telling us what your view is on whether you think we need to hold off to see what the Supreme Court does in Fernandez or whether you think that the state of the law allows this court to proceed. Yes, Your Honor. The oral argument in Fernandez is scheduled for November 12, along with another case raising other aspects of compassionate release in the First Step Act. And so my belief is that jurisprudential prudence would dictate, with the argument less than three weeks away, that discretion is the better part of valor. Some issues have come up. But why? I mean, what could the Supreme Court possibly say that would affect the disposition of this case? Well, the Supreme Court will be speaking about the exercise of district court discretion consistent with and pursuant to Coon v. the United States, the deferential rule that must be given to district court sentences. And in this particular case, after Seabrook had served 21 months, he was told to be at home, and he was at home all this period of time. There's no allegation. And what do you mean by that? The probation department orally told him to stay at home, and he was. Orally told him to stay at home. That's not a condition of supervised release. No, I'm just saying that that's the reality. No, no, hang on. Let's just take it one step at a time. The district court can impose various conditions of supervised release.  Is it among the conditions ordered by the district court? No. This was an oral direction from the probation department. But my point is, after serving 21 months, where the court in terms of, and I think Judge Nardini, you made reference to, what sometimes defense lawyers view as a sentencing pyramid, that there are gradations of defendants. Some cooperate. Some plead guilty but don't get acceptance. And let me pause there because you mentioned the cooperator. I mean, isn't that one point as to which it seems to me that the district court would have clearly abused its even broad discretion in thinking that there's anything analogous between somebody like your client and somebody who cooperated, actively cooperated and got a 5K. I mean, talk about apples and oranges. I don't even understand how, you know, a lenient sentence given to a cooperator can shed any light on the sentence that's given to a non-cooperator. Well, let me respond in this way and make reference to a decision, a per curiam decision in which both Your Honor and Judge Menasche participated in United States v. Keats back in 21-fed-4th. And the concern in that case was that were there a reduction in sentence to the petitioner, to the defendant, reducing Keats' sentence would have created sentencing disparity. Well, that's because in the 3553A factors, we've said it's permissible to think about that, right? Yes. But that's not the same question as whether it's an extraordinarily compelling reason that can justify a sentence reduction in the first place. No. Here it was COVID plus the disparity. And as Judge Menasche has said. But COVID is what you allege, but the district court did not adopt that as an extraordinarily compelling circumstance. But it was a recognized situation plus the defendant's. Recognized situation. I mean, I think we all recognize there was a thing called COVID. But for present purposes, our review of the district court includes what it found were extraordinary and compelling circumstances. Health conditions. Correct me if I'm wrong, but I thought the court said that the COVID was not an extraordinary and compelling circumstance. Yes, but. No, just the yeses. You agree that's what the district court said. Are you suggesting that there's sort of an alternative basis in the record for affirming, which is we should say the judge was wrong and that we should say COVID was an extraordinary and compelling circumstance. Well, I believe that the judge also, Judge Hellstein also relied on Seabrook's health condition as a senior citizen after having served 21 months. But my point about. As an extraordinary compelling circumstance. Yes. Okay. But my point is that using that sentencing pyramid as a guide, none of that sentence, which is currently before the court of the 21 months is substantially higher than the sentence that was imposed on the co-defendant Huberfeld and substantially above the sentence that the cooperator Recknitz got. My point is that as opposed to keep, which is a bright line test, you don't want to allow that sentencing disparity because it undermines cooperation and other positive aspects of the criminal justice system. My point is that in this particular case, the pyramid is is cognizable and recognizable. But what we said is not that we should not allow a disparity between We just said that's neither extraordinary nor compelling. Right. Because that is an obviously explainable and expected result of the sentencing system. Well,  We should reinterpret that holding to say, well, we really only think that insofar as we're not preserving a disparity such that we would disincentivize cooperation. Right. That's your position. My position is that if you look at footnote four in Fernandez, there was a recognition that even in a situation where you have cooperator testimony, you have defendants who pled guilty and accepted responsibility, that there can be sentencing disparity. And I say that under the Kuhn decision, Judge Hellstein's recognition of this disparity and his modest imposition of that for a first offender would be appropriate. What I think the panel could do, should do would be to hold the appeal in abeyance to remand the matter to the district court. There's a pending re-sentence motion based upon the sentencing guideline. Hold it in abeyance and remand it? I'm sorry? We should hold it in abeyance and also remand it? For a report from the district court as to whether based upon the time served, good time served, that the sentence would be moot or an appeal would be moot because. Well, if you prevail on that motion, you know, at best you could reduce the sentence to what, 42 months? No. He can be re-sentenced to anything the judge wants to do. But my point is the sentence would be vacated. No, because it would be a retroactive application of the new guideline, right? It is, but there's nothing that prohibits the judge from going below the guideline. And that's all I'm saying, that this time can be productively put to holding the appeal in abeyance. Can I ask, have you, the other side says you've asked for Judge Hellerstein to recuse? Yes. And do you agree with opposing counsel that motion has not yet been acted upon? That's true. I had moved to dismiss the appeal as moot. That was denied. Can you just remind me, I'm sure it's in the record somewhere, and I just didn't see it. What was the basis that you advanced to the district court for the recusal? The judge's prior involvement with a witness. The reckoning issue. The issue we discussed in reckoning. Yes. Okay. That's all I needed to know. But my point is that with a sentencing guideline amendment being retroactive, this time between now and when the Supreme Court rules in Fernandez can clarify it. But in answer to Judge Menasci, I believe that footnote 4 provides sufficient discretion to a sentencing judge in this particular case who was aware of, had created a sentencing pyramid. You're saying footnote 4 of Fernandez? Is that what you're saying? I'm sorry? Footnote 4 of Fernandez? Yes. Right. So that's the one that says there might be something, you know. Yes. There was a recognition. So what makes this extraordinary? So I understand that the series of events that has happened in this case is pretty unusual. But wouldn't you think the extraordinary circumstances would have to be something that renders the disparity between co-defendants something other than explainable by one cooperated and was subject to a different guideline and the other one went to trial and had a more serious charge? No. But here it was the comparison, not the reckoning of the sentence, but the Huberfelds. And in this particular case, the judge had a perception of the involvement with pyramid partners, Huberfeld being an investor and involved in pyramid partners. And he wanted to maintain that sentencing harshness, the Seabrook above and beyond Huberfeld. But why is that extraordinary and compelling that there's one sentencing judge who has a theory for how the two different defendants should be treated if that sentencing judge doesn't get to defend, doesn't get to sentence the other judge? Like, why does he get to reach out and, you know, second-guess the work of some other district court judge who actually has the authority to sentence that defendant? He was simply moving to reestablish the symmetry in the case. He wasn't second-guessing. He wasn't critical of Judge Lyman. It was a question of what is fair. And under the Supreme Court's decision in Concepcion But he is second-guessing Judge Lyman because he says the way I saw it, this is what the sentences should be, and this is how I would arrange it. But if Judge Lyman is going to give him a lower one, then at least I'm going to preserve the ratio that I envisioned for these defendants. And so, therefore, I'm going to reduce the sentence of the defendant over whom I have authority. Well, 3553A, among other things, says the sentence should be sufficient and not excessive. And in this particular case, that's what the judge did. He took it into consideration. He made sure that this And we're not doing the 3553A factors. We're deciding whether there's an extraordinary and compelling reason, right? And the disparity Judge Lyman doesn't agree with Judge Hellerstein about how all of the defendants should be sentenced. That doesn't seem like it's an extraordinarily compelling reason. These are very opinionated people. They disagree with us all the time. Well, the extraordinary circumstances were COVID, the health of the client Okay, since you're saying this again, let's be clear about what the judge did and did not do. The judge explicitly said, and I just went back and read it again because I was Okay, maybe not COVID, but maybe senior citizen. Fortunately, it's a very short opinion that Judge Hellerstein wrote. He explicitly says COVID isn't an extraordinary circumstance. He explicitly says that the Bureau of Prisons is good enough with its medical care to deal with all of Seabrook's health conditions, and then he relies exclusively on the disparity of sentencing as the extraordinary circumstance. And indeed, to whatever extent he's considering the 3553A factors as well, he says, I'm looking at those, including the need to avoid unwarranted sentencing disparities. It reflects the seriousness of his crime, the lack of acceptance of responsibility, and also remedies the unjust sentencing disparity, making no reference whatsoever to Mr. Seabrook's age or his health or the risks of COVID. So what you told us before is simply false. Secondly, with respect to the – while we're on the subject, with respect to what the Probation Department orally said, is there anything in our record before us that verifies that that was said and complied with by Mr. Seabrook? Nothing in the record. Nothing in the record. And there was no application to the judge ever to say the probation officer is imposing his own conditions of supervised release that the court didn't impose. Nobody made any application on Mr. Seabrook's behalf to invalidate that alleged oral instruction by the Probation Department. No. Okay. So that is not at all in this case as far as we are concerned. There is nothing in this case about house arrest. Would you not agree with that? Yes, sir. Okay. Thank you. Okay. We have your argument. And why don't we hear from the government. Two minutes of rebuttal and we'll keep that tight. I want to start by correcting just one factual matter and argument that opposing counsel made. He said that under Section 3582C2 that the court can reduce the guideline, the sentence, as much as it would like, and that's not true. As we put in our papers, the court can only reduce the guidelines under that section to a 41-month sentence. Yes, because the statute says the court may reduce the term of imprisonment after considering the factors set forth in Section 3553A to the extent they are applicable if such a reduction is consistent with applicable policy statements issued by a sentencing commission. So you think that that forecloses downward variance? That's right. And with that, unless the court has any questions, we're happy to rest on our briefs. No, that's fine. Thank you very much to both parties. We appreciate your coming in and we will take the case under advisement.